## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**ELSIE SOLOMON**                    **CIVIL DOCKET NO. 6:24-CV-00643**

**VERSUS**                            **JUDGE DAVID C. JOSEPH**

**LAFAYETTE CONSOLIDATED**            **MAGISTRATE JUDGE DAVID J. AYO**
**GOVERNMENT, ET AL**

### MEMORANDUM RULING

Before the Court is a JOINT MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 22] filed by Defendants Lafayette City-Parish Consolidated Government ("LCG"), Officer Clayton Green ("Officer Green"), Noise LLC d/b/a La Bamba ("Noise LLC"), and the Lafayette Municipal Fire and Police Civil Service Board ("CSB") (hereinafter, "Defendants"). Defendants seek summary judgment with respect to all claims asserted by Plaintiff, which include Section 1983 claims and various negligence claims under state law. Despite having been granted two extensions of time to oppose the instant Motion, Plaintiff declined to file an opposition brief, and the Motion is, therefore, unopposed. For the reasons that follow, Defendants' Motion is GRANTED in its entirety.

### FACTUAL AND PROCEDURAL HISTORY

On the night of April 9, 2023, off-duty Lafayette police officer Clayton Green was working security at the Lafayette night club La Bamba when an altercation involving multiple people broke out in the parking lot. The following factual basis is set forth by the Defendants in their Motion and is uncontroverted by the Plaintiff:

[O]n April 10, 2023, Officer Green placed himself in service for an off-duty security detail at "La Bamba," while wearing his department issued class B uniform and outer carrier vest. While en route to LaBamba, Officer Green heard other officers with Lafayette Police Department working security detail at KOK Wings make a request for additional officers to assist with crowd control. Officer Green responded to the request for assistance and went to KOK Wings.

The disturbance at KOK Wings involved three rival gangs. At approximately 2115 hours, Officers Clayton Green, Maverick Morvant and Zakarie Narcisse left KOK Wings and followed the crowd to La Bamba to assist with crowd control. In Officer Green's experience, the crowds that leave KOK Wings at 9:00 pm generally reassemble at La Bamba.

Upon arrival at La Bamba, Officer Green observed fights in the parking lot. Officer Green separated the individuals involved in the fight, then he observed another fight which he attempted to break up. Officer Green advised one of the event promoters that the bar needed to shut down, due to the escalating dangerous situation.

While responding to the disturbances, Officer Green heard a male in the crowd (wearing a pink shirt/jacket) say, "I got something for you," which, in Officer Green's training and experience was an indication to him that the person was implying that he had a gun. Upon hearing this statement, Officer Green retrieved his patrol rifle from his vehicle, as he believed that there was an increased risk that someone in the crowd may produce a firearm.

After retrieving his patrol rifle, Officer Green returned to the area where the fight was underway, and Officer Green observed the same individuals fighting again. Officer Green attempted to defuse the altercation between a large black male in a blue shirt and a black male in a white shirt with black pants (who was later identified as George Andrews). Officer Green and other officers on scene broke up several fights before the shooting, and there was a heavy police presence in the parking lot at La Bamba, with multiple police vehicles on scene with overhead emergency lights activated.

While still dealing with trying to disburse the crowd, Officer Green observed a black male with dread-locked hair wearing a green shirt (later identified as Deiondre Solomon) remove a black handgun from his waistband and shoot Andrews. In response to witnessing Solomon shoot Andrews, Officer Green shouted, "Hey!" Solomon looked at Officer

Green after shooting Andrews, whereupon Officer Green raised his patrol rifle and pointed it at Solomon. Instead of stopping and relinquishing control of his firearm, Solomon turned and ran towards Johnston Street with the gun in his right hand. Deiondre Solomon was running through a large group of civilians and towards Officers Narcisse and Morvant while he remained armed.

In what can only be described as an intense and rapidly evolving situation where Deiondre had just committed an aggravated battery by shooting in front of Officer Green, with Deiondre fleeing while still armed with a handgun in an area filled with other officers and innocent civilians, Officer Green fired one (1) shot, striking Solomon, in response to the continued imminent threat of death or great bodily injury posed by Solomon's violent actions in order to protect bystanders and fellow officers from any further danger of harm.

Officer Green's in-car camera video did not capture the shooting, but the camera's audio captured the first gunshot at 21:48:34 (fired by Solomon), and the second gunshot (fired by Officer Green) at 21:48:37 revealing the rapidly evolving nature of this event. Officer Green's body-worn camera began recording at 2146 hours and began when Officer Green retrieved his patrol rifle from his unit. Officer Green slung his rifle across his chest, which caused the rifle and rifle sling to cover the lens of his body worn camera during parts of the recording.

After Officer Green discharged his patrol rifle, he notified LPD Dispatch of "Shots fired" and requested Acadian Ambulance. Officers began providing assistance to Solomon; however, he was pronounced dead at the hospital, having succumbed to the gunshot wound. Immediately after Officer Green fired his duty weapon, he reported that Solomon had just shot someone.[1]

[Doc. 22-1, pp. 7-11].

The Louisiana State Police ("LSP") conducted a criminal investigation into the shooting. After completing its investigation, the LSP concluded that there was no probable cause to substantiate criminal charges against Officer Green or any other

---

[1] All citations within the factual narrative presented by Defendants have been omitted for clarity and readability. The factual narrative is taken directly from the Defendants' memorandum, [Doc. 22-1, pp. 7-11], and contains full citations therein.

officers involved in the incident. [Doc. 22-3]. LSP classified the shooting as a justifiable homicide and submitted its report to the Fifteenth Judicial District Attorney's Office for review, which refused charges on November 16, 2023. [Doc. 22-4].

On April 8, 2024, Plaintiff—Solomon's mother—filed the above-captioned wrongful death and survival action in the Fifteenth Judicial District Court for the Parish of Lafayette, alleging claims against LCG, Officer Green in both his individual and official capacities, Noise LLC, and CSB. LCG and Officer Green removed the matter to this Court on May 15, 2024, and, along with Noise LLC, filed the instant Motion on September 10, 2025. Despite being granted two extensions of time to respond to the instant Motion, [Docs. 25, 29], the Plaintiff failed to do so. Considering the foregoing, the unopposed Motion is now ripe for review.

## LAW & ANALYSIS

### I.    Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is

"material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019) (citing *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient

competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

When reviewing a motion for summary judgment, the court must view all of the facts in the light most favorable to the non-moving parties and draw all reasonable inferences in their favor. But an assertion of qualified immunity alters the standard. Once qualified immunity is asserted, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017). Nonetheless, all inferences are to be viewed by the Court in the light most favorable to the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Here, the Plaintiff does not oppose the instant Motion. Nevertheless, the Court does not find it proper to simply grant the instant Motion as unopposed. *See, e.g., Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012), *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam), and *John v. State of Louisiana (Bd. of Trs. for State Colls. and Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985), *cited in Clifton v. Famous Bourbon Mgmt. Grp., Inc.*, 762 F.Supp.3d 480, 488 (E.D. La. Jan. 15, 2025). Instead, the proper inquiry to an unopposed motion for summary judgment is to determine whether the facts advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment. *Clifton,* 762 F.Supp.3d at 488, *citing Servicios Azucareros de Venezuela, C.A*, 702 F.3d at 806.

## II.    Analysis

### A.    Claims Against Officer Green and Qualified Immunity

Plaintiff alleges that Officer Green's use of deadly force was unwarranted and excessive under state and federal law, arguing that Solomon was shot and killed "while he posed no danger to anyone."  [Doc. 1-1, ¶¶ 8-9].  The Defendants dispute this, arguing that Officer Green's use of force was reasonable under the circumstances, and that he therefore did not violate the Fourth Amendment.  Alternatively, Officer Green argues that he is entitled to qualified immunity.[2]

As an initial matter, it is axiomatic that claims against police officers in their official capacities are treated as claims against the municipality that the officers serve.  *Brooks v. George Cnty.,* 84 F.3d 157, 165 (5th Cir.1996).  *See also Hafer v. Melo,* 502 U.S. 21, 25, 112 S. Ct. 358, 116 L.Ed.2d 301 (1991).  That is, in an official-capacity suit, the real party in interest is the municipality and not the named official.  As LCG is a named defendant, all claims alleged against Officer Green in his official capacity are duplicative of those claims.  Therefore, Defendants' motion to dismiss Plaintiff's Section 1983 claims alleged against Officer Green in his official capacity is GRANTED.

---

[2]    The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).  "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 685, 129 S. Ct. 1937, 1953, 173 L.Ed.2d 868 (2009) (internal quotations and citations omitted).  A qualified immunity defense is thus "an immunity from suit rather than a mere defense to liability."  *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009).

Turning to the Section 1983 claim alleged against Officer Green in his individual capacity, the Court notes that to prevail on an excessive force claim, a plaintiff must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009), *citing Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir.2009); *see also Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir.2007).  The first element is easily satisfied, because it is undisputed that Officer Green shot and killed Solomon.  The relevant question in this case is whether the force was "clearly excessive" or "clearly unreasonable."

In deciding this question, the Court must determine whether "the totality of the circumstances justified" the particular use of force.  *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008), *citing Tennessee v. Garner,* 471 U.S. 1, 9, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985) (the use of deadly force violates the Fourth Amendment unless "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.").  An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others.  *Manis*, 585 F.3d at 843.  The question is one of "objective reasonableness," not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight.  *Id.* at 843, *citing Ontiveros,* 564 F.3d at 382-83.  *See also Graham v. Connor,* 490 U.S. 386, 396–97, 109 S. Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

In *Graham*, the Supreme Court provided the following factors to assess whether the force used was reasonable: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989), *cited in Francis v. Mouton*, 2025 WL 2620389, at *5 (W.D. La. Sept. 10, 2025) (Doughty, J.). "This analysis considers factors such as the time officers had to make decisions, whether the force used is 'measured and ascending' in accordance with the suspect's aggression, whether the suspect signaled that he was armed, and whether he moved toward or away from law enforcement." *Estate of Parker*, 140 F.4th at 239. Importantly, when an officer uses deadly force, the second *Graham* factor is "generally the most important." *Estate of Parker v. Mississippi Dep't of Public Safety*, 140 F.4th 226, 240 (5th Cir. 2025).

In support of its argument that the shooting of Solomon was justified, Defendants attach the report of LSP Detective Todd Rogers, who discusses his examination of the CCTV footage of the incident, as follows:

> I collectively compared La [B]amba CCTV footage, Cpl. Green's BWC and Aquarium Central's CCTV footage and depicted the following. CCTV footage retrieved from La Bamba Bar and Lounge assisted in identifying the individuals involved in the physical altercation. A review of this footage shows a black male wearing a blue shirt, later identified as [Deiondre] Breaux, a black male wearing a white shirt and black pants, later identified as George Andrews, a black male wearing a green shirt and black pants, later identified as Deiondre Solomon and a black male later identified as Divion Francis.

> The altercation between Breaux, Andrews, Francis, and Solomon continued for several minutes before Cpl. Green was able to intervene. Andrews and Breaux continued engaging in a verbal altercation as Solomon walked away from the scene before exiting from the camera

view. A few minutes later, Solomon returned to the scene with a visibly different body posture as he grasped and held the front of his pants. Upon Solomon's return, he positioned himself towards the outer perimeter of the crowd, watching the verbal altercation between Breaux, Francis, and Andrews, all while holding on to a black object in his front waistband. Due to the CCTV video quality, I cannot determine what Solomon is grasping. However, I observed a black object in his front waistband.

I observed Andrews come close to Solomon moments before I heard a single gunshot. Due to the CCTV frame rate, video quality, and obscurity from patrons, I am unable to identify Solomon as the shooter. Following the gunshot, I observed George Andrews run and stumble to the ground before leaving the CCTV view. I also observed Solomon turn counterclockwise and run towards Johnston Street as Cpl. Green followed within feet of him. I viewed Cpl. Green's BWC and briefly observed Solomon running before the BWC became obscured by Cpl. Green's rifle. Approximately three seconds after the initial gunshot, I heard a second gunshot fired by Cpl. Green. I cannot view precisely what transpired when I heard the second gunshot, due to Cpl. Green's rifle obscuring his BWC. Moments later, I observed Solomon lying on the ground.

Cpl. Green informed P.O. Morvant to pick up a black Glock handgun lying close to Solomon. P.O. Morvant picked up the black Glock handgun and secured it in his marked police unit. P.O. Narcisse and P.O. Cormier administered medical aid to Solomon until Acadian Ambulance Services arrived. Acadian Ambulance Services transported Solomon to Ochsner Lafayette General Hospital, where they treated him for a single gunshot wound. Solomon later succumbed to his injuries.

According to Cpl. Green, he observed Solomon remove a black handgun from his waistband and shoot Andrews. Cpl. Green then yelled, "Hey". Solomon looked at Cpl. Green, turned, and ran towards Johnston Street. Cpl. Green said he raised his rifle but chose not to fire at that moment due to bystanders. He chased Solomon a short distance, keeping visual contact. As he came within close proximity to Solomon, he pressed his rifle into Solomon's hip and fired one round. As a result, Mr. Solomon fell to the ground and released the firearm he was holding. Cpl. Green said he fired at Solomon in fear for the safety of the bystanders and fellow officers.

Statements made by Cpl. Green, P.O. Narcisse, P.O. Cormier, and P.O. Morvant were consistent with the findings of this investigation. After

carefully reviewing the evidence collected, interviews, and facts learned during this investigation, I found no probable cause to substantiate criminal charges on Cpl. Green or any other officers involved in this incident. I will submit this officer-involved shooting report to the 15th Judicial District Attorney's Office for review.

[Doc. 22-3].

The Plaintiff does not dispute the facts set forth in the LSP report.[3] Moreover, ample precedent supports the reasonableness of using deadly force against an active shooter. *Estate of Parker*, 140 F.4th at 240 n.37, *citing Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) ("[T]his court's cases hold that '[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others.'"); *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) (emphasizing that the suspect being armed is often the decisive factor in assessing the reasonableness of deadly force). In *Garza v. Briones*, the Fifth Circuit held that officers who believed they were "confronting an unpredictable man armed with a dangerous weapon" had probable cause to conclude that the suspect posed a serious threat of physical injury or death. 943 F.3d 740, 745 (5th Cir. 2019). *See also Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (holding that officer had "probable cause to believe that the suspect pose[d] a threat of serious physical harm" when the

---

[3]    When there is video evidence, a court is not required to favor a plaintiff's allegations over the video evidence. *Brown v. Coulston*, 463 F.Supp.3d 762, 769 (E.D. Tex. 2020), *citing Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017). *See also Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015) ("a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings.").

suspect was holding a handgun, even though the suspect never pointed it at the officer); *Ballard v. Burton*, 444 F.3d 391, 402–03 (5th Cir. 2006) (holding that officer could have reasonably believed suspect posed "a threat of serious harm to himself or to other officers" when suspect "refused to put down his rifle, discharged the rifle into the air several times while near officers, and pointed it in the general direction of law enforcement officers"); *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 385 (5th Cir. 2009) (officer's use of deadly force was reasonable when a suspect moved out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon).

Here, considering the jurisprudence and evidence presented by Defendants, the Court concludes that the undisputed facts show that Officer Green's use of lethal force was reasonable under the *Graham* standard.  Under the first *Graham* factor, the uncontroverted evidence shows that Officer Green witnessed Solomon shoot another patron in the parking lot and then flee, with his gun still in his hand, into a crowd of people standing outside La Bamba.  Officer Green's pursuit of Solomon occurred within seconds of Solomon's shooting of George Andrews.  Second—and most critical in a deadly force case—Solomon posed a clear and immediate threat to the safety of other officers on the scene and the surrounding public because he was running through the crowd with a gun, having just shot another patron.  Considering these facts, the Court finds that there was no violation of Solomon's Fourth Amendment rights. Because the Plaintiff has not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, she also fails to meet her burden to

overcome Officer Green's qualified immunity defense.  *See Magee*, 675 F.3d at 869 (affirming the district court's finding that the defendants were entitled to qualified immunity and explaining that "[b]ecause we determine that the Does have failed to state a violation of [their child's] constitutional rights, we need not further consider the qualified immunity analysis"); *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) ("If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity.").  Therefore, Defendants' motion for summary dismissal of the Plaintiff's § 1983 claim against Officer Green in his individual capacity is GRANTED.

Plaintiff's state law claim of excessive force against Officer Green is likewise without merit.  Louisiana applies the same standards to analyze claims of excessive force as the standards utilized under federal law.  *Sanders v. CEOC LLC*, 586 F.Supp.3d 519, 527–28 (W.D. La. 2022) (Doughty, J.), *citing Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997), *reh'g denied*, 146 F.3d 282, *cert. denied*, 525 U.S. 1054, 119 S. Ct. 618, 142 L.Ed.2d 557 (1998).  *See also Deville v. Marcantel*, 567 F.3d 156, 172–73 (5th Cir. 2009) ("Louisiana's excessive force tort mirrors its federal constitutional counterpart.  'The use of force when necessary to make an arrest is a legitimate police function.  But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result.'"); *Winston v. City of Shreveport*, 390 F. App'x 379, 385–86 (5th Cir. 2010) ("Under Louisiana law, we apply the same 'reasonableness' standard to Winston's state law claims of false arrest and

excessive force that we apply when analyzing whether qualified immunity shields Officer Willis against Winston's federal constitutional claims.").

Additionally, Louisiana applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the Supreme Court of the United States to recognize a qualified good faith immunity for state officers under § 1983. *Moresi v. State*, 567 So.2d 1081, 1093 (La. 1990). Therefore, for the same reasons set forth above regarding Plaintiff's federal claims, Defendants' motion for summary dismissal of the Plaintiff's state law excessive force claim against Officer Green is GRANTED.

### B.  Claims Against LCG

The Plaintiff alleges that LCG "is responsible for the wrongful actions of its police officer employees and is equally responsible for neglect in failing to properly access officers fit for duty, training, and supervision." [Doc. 1-1, ¶ 14].

It is unclear to the Court whether the Plaintiff's claims against LCG are lodged under federal or state law. At first blush, it appears the Plaintiff is asserting a *Monell* claim against LCG by alleging claims of negligent hiring, supervision, and retention. In *Monell v. Department of Social Services*, the Supreme Court held that municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*. 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, to state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a

constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021), *citing Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017). *See also Monell*, 436 U.S. at 694. "'[I]t is well established that there must be an underlying constitutional violation for there to be a claim under *Monell*.'" *Landry v. Laborde-Lahoz*, 852 F. App'x 123, 127 (5th Cir. 2021). *See also Taite v. City of Fort Worth Texas*, 681 F. App'x 307, 309 (5th Cir. 2017) (accord). As discussed above, no constitutional violation took place here. Therefore, to the extent that the Plaintiff asserts a *Monell* claim, it fails due to the absence of an underlying constitutional violation. *See Francis*, 2025 WL 2620389, at *7.[4]

Movants couch the Plaintiff's claims against LCG under *state* negligence law and argue that LCG is protected from liability by a variety of statutory immunities.

---

[4]    In the interest of a complete review of the record in this case, the Court considers Plaintiff's contention that LCG's policy of hiring and retaining unqualified officers is demonstrated by the allegation that Officer Green was, "at the time of the shooting, suffering from post-traumatic stress disorder or some other mental illness due to a recent life experience," and "was unfit to perform police duties." [Doc. 1-1, ¶ 10]. Under federal law, a municipality may be held liable for decisions about hiring and retention if the plaintiff can demonstrate "deliberate indifference" to the "known or obvious consequence[s]" of such decisions. *Gomez*, 18 F.4th at 777–78, *citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997). But "[a] showing of simple or even heightened negligence will not suffice." *Brown*, 520 U.S. at 407. Deliberate indifference exists "where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights." *Gros v. City of Grand Prairie*, 209 F.3d 431, 433–34 (5th Cir. 2000), *citing Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998).[4]

Here, the record is devoid of evidence showing that Officer Green was hired or retained in spite of a condition that made him unfit to serve as a police officer. Indeed, the Plaintiff fails to proffer *any* evidence that would demonstrate deliberate indifference in the hiring or retention of Officer Green. Consequently, any *Monell* claim brought by the Plaintiff would fail for this additional reason.

Specifically, LCG argues that it is immune from liability under La. R.S. § 9:2800.10[5] and La. R.S. § 9:2800.19.[6]  Under § 9:2800.10, LCG argues that immunity attaches because it is undisputed that: (1) Solomon was in the act of committing a felony offense; (2) Solomon was fleeing from committing the felony offense of aggravated battery by the shooting and/or attempted murder of George Andrews at the time of Officer Green's use of deadly force; and (3) LSP's investigation into the shooting concluded that Officer Green's use of force was justifiable.  The Plaintiff does not dispute the evidence submitted by the Defendants, and the Court agrees that

---

[5]    Section 9:2800.10 provides:

A. No person shall be liable for damages for injury, death, or loss sustained by a perpetrator of a felony offense during the commission of the offense or while fleeing the scene of the offense.

B. The provisions of this Section shall apply regardless of whether the injury, death, or loss was caused by an intentional or unintentional act or omission or a condition of property or a building. However, the provisions of this Section shall not apply if injury to or death of a perpetrator results from an intentional act involving the use of excessive force.

C. For purposes of this Section "damages" includes all general and special damages which may be recoverable for personal injury, death, or loss of or damage to property, including those otherwise recoverable in a survival or wrongful death action.

La. R.S. § 9:2800.10.

[6]    Section 9:2800.19 provides:

A. A person who uses reasonable and apparently necessary or deadly force or violence for the purpose of preventing a forcible offense against the person or his property in accordance with R.S. 14:19 or 20 is immune from civil action for the use of reasonable and apparently necessary or deadly force or violence.

B. The court shall award reasonable attorney fees, court costs, compensation for loss of income, and all expenses to the defendant in any civil action if the court finds that the defendant is immune from suit in accordance with Subsection A of this Section.

La. R.S. § 9:2800.19.

immunity under Section 9:2800.10 applies.  *See, e.g., Simmons v. Hughes*, 316 So.3d 488 (La. App. 1st Cir. 11/25/20) (in suit arising from alleged use of excessive force, the officers and the city were entitled to statutory immunity because defendants' use of force was reasonable when evaluated against that of ordinary, prudent and reasonable men placed in the same position as the officers and with the same knowledge as the officers, and the arrestee pointed out no facts that elevated defendants' actions to the required level of misconduct).[7]  Considering the foregoing, Defendant's motion for summary dismissal of the Plaintiff's negligence claims against LCG is GRANTED.

Plaintiff's separate state law claim for negligent hiring, supervision, and retention against LCG is also subject to dismissal under La. R.S. § 9:2798.1(B), which grants immunity to public entities, as well as their officers and employees, for discretionary acts performed within the course and scope of their official duties.  *See Asante-Chioke v. Dowdle*, 689 F.Supp.3d 317, 328 (E.D. La. 2023), *vacated on other grounds and remanded*, 103 F.4th 1126 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1051, 220 L.Ed.2d 381 (2025).  In determining whether this statute applies, Louisiana courts employ the two-step test set out by the United States Supreme Court in *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L.Ed.2d 531 (1988).  *See*

---

[7]    LCG also argues that it is immune under La. R.S. § 9:2793.11, which prohibits a civil claim for damages against peace officers engaged in law enforcement duties. While the substance of the statute appears to apply to the facts of this case, it is unclear whether § 9:2793.11 applies retroactively to the incident in question.  The effective date of the statute is April 29, 2024, and the incident giving rise to this lawsuit occurred on April 9, 2023. Movants failed to brief the issue of retroactivity, and for this reason, the Court declines to consider the applicability of § 9:2793.11.

*Commerce & Indus. Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 571 (5th Cir. 2002).  The first step requires that the action at issue be discretionary.  *Id.*  Conduct cannot be discretionary unless it involves an element of judgment or choice.  Thus, immunity does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  *Id.*, *quoting Berkovitz*, 486 U.S. at 536.  If there is no statutory, regulatory, or procedural policy directive dictating the employees' course of conduct, then the court proceeds to the second step of the test.  The second step requires a court to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Id.* at 572, *quoting Berkovitz*, 486 U.S. at 536–37.  The discretionary immunity statute was designed to protect governmental actions and decisions based on considerations of public policy.  *Id.*

Discretionary immunity under La. R.S. § 9:2798.1 is an affirmative defense and, as such, the party raising it bears the initial burden of demonstrating its applicability.  *Gomez v. City of New Orleans*, 2023 WL 4351230, at *3 (E.D. La. July 5, 2023), *citing Dominique v. St. Tammany Parish*, 313 So.3d 307, 314 (La. App. 1st Cir. 2020); *Mercadel v. State through Dep't of Pub. Safety & Corr.*, 2019 WL 2234404, at *5 (La. App. 1st Cir. May 15, 2019).  "If the defendant establishes entitlement to immunity, the burden shifts to the plaintiffs to show there is conduct that would except the defendant [ ] from liability."  *Dominique*, 313 So.3d at 314 n.6.  Under Louisiana law, "[i]mmunity statutes are strictly construed against the party claiming immunity."  *Id.* at 314.

Here, Defendants argue that LCG's hiring, supervision, and retention decisions are entirely discretionary and, thus, subject to immunity. Specifically, Defendants argue that no law, regulation, or policy of the State of Louisiana explicitly directs LCG's course of action with respect to the hiring, supervision, and retention of police officers, including Officer Green, and that all hiring, training, and supervisory decisions are grounded in a particular agency's policy considerations. Plaintiff did not oppose the instant Motion and has not otherwise demonstrated that an exception to La. R.S. § 9:2798.1 applies, nor has the Plaintiff alleged *facts* to substantiate her allegations in the Complaint that LCG was deficient in its training, supervision, or hiring Officer Green, or that Officer Green was experiencing a mental health issue at the time of Solomon's shooting. Without more, Plaintiff fails to demonstrate that LCG is not entitled to immunity under La. R.S. § 9:2798.1(B) in connection with its hiring, supervision, and retention of Officer Green, and this claim should be dismissed.

Finally, the Court addresses Plaintiff's claim for LCG's vicarious liability for Officer Green's conduct. Under Article 2317 of the Louisiana Civil Code, "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." La. Civ. Code art. 2317. Because the Court concludes that there is no liability on the part of Officer Green, there is no liability to trigger vicarious liability against LCG under Article 2317, and this claim should be dismissed.

### C.    Claims Against Noise LLC

Plaintiff alleges a negligence claim against Noice LLC in its Complaint, [Doc. 1-1, ¶ 13], but because the Plaintiff failed to file a response to the instant Motion, there is a lack of clarity regarding the precise theory of recovery alleged. Noise LLC argues that because Officer Green's use of deadly force was justified, Plaintiff cannot establish a negligence or premises liability claim under Louisiana law. Noise LLC also argues that it had no duty to protect Solomon from his own felonious conduct, nor from law enforcement's justified response. Finally, Noise LLC argues that it is entitled to immunity from suit pursuant to La. R.S. § 9:2800.10.

Under Louisiana law, a business proprietor owes his patrons a duty to provide a reasonably safe place.[8] *Fredericks v. Daiquiris & Creams of Mandeville, L.L.C.*, 906 So.2d 636, 640 (La. App. 1st Cir. 3/24/05), *writ denied,* 904 So.2d 706 (La. 6/17/05), *citing Taylor v. Stewart,* 672 So.2d 302, 306. (La. App. 1st Cir. 4/4/96). The proprietor's general duty toward his patrons has been construed to encompass a number of more specific obligations. *Fredericks*, 906 So.2d at 640, *citing Taylor,* 672 So.2d at 306–07. First, the proprietor must himself refrain from any conduct likely to cause injury to a guest. He must maintain his premises free from unreasonable risks of harm or warn patrons of known dangers thereon, and he must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party. *Fredericks*, 906 So.2d at 640, *citing Taylor,* 672 So.2d at 307.

---

[8]    Louisiana courts employ a duty-risk analysis in determining whether to impose liability under the general negligence principles of Louisiana Civil Code article 2315, with duty being but one element of the analysis. *Fredericks*, 906 So.2d at 639.

*See also Rodriguez v. New Orleans Public Serv., Inc.,* 400 So.2d 884, 887 (La. 1981).[9] As to criminal acts performed by third parties, there is generally no duty to protect others from the criminal acts of those parties. *Fredericks*, 906 So.2d at 640, *citing Taylor,* 672 So.2d at 307. In other words, the general duty of reasonable care does not extend to protecting patrons from the unanticipated criminal acts of third parties. *Id.* Only when the proprietor has knowledge of, or can be imputed with knowledge of, the third party's intended conduct is the duty to protect invoked, triggering the sub-duties. *Taylor,* 672 So.2d at 307. This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Importantly, the applicable duty owed by a bar owner to a guest does not differ when the guest is criminally attacked by another guest, rather than by a third party. *See Taylor,* 672 So.2d at 309 (where woman was assaulted by her former boyfriend after following him into the parking lot of a bar and both had been patrons of the bar shortly before the attack occurred, court held that bar proprietor had no duty to protect her from such an attack, despite a history of past troubles between the two, because neither the proprietor nor her employees had any prior knowledge that he might physically harm her).

---

[9]  Reasonable care in the context of the threat of harm presented by the enumerated parties has been interpreted, in turn, to embrace certain sub-duties. First, should a disturbance or a likely disturbance manifest itself, the proprietor, if time allows, must attempt to prevent injury to his patrons by calling the police. *Fredericks*, 906 So.2d at 640, *citing Taylor,* 672 So.2d at 307. Second, should the business owner or manager become aware of impending or possibly impending danger, he must warn his patrons of the potential danger. *Id.*

Plaintiff submits no evidence in response to the Motion to demonstrate the basis upon which Noise LLC would owe a duty to the Plaintiff to prevent the particular harm that occurred here. For instance, the Plaintiff has not offered evidence of a history of problems at La Bamba; a history of problems between Solomon and George Andrews; or evidence that the La Bamba employees knew that trouble was imminent or that Solomon was likely to draw a gun and shoot another patron. Considering the foregoing, Plaintiff fails to demonstrate that Noise LLC owed Solomon a duty under the facts of this case, and Plaintiff's negligence claims against Noise LLC must be dismissed.[10]

### D.    Claims Against CSB

Finally, Plaintiff alleges a negligence claim against CSB,[11] contending that the "proximate cause of [Solomon's] death [was] the negligence of LAFAYETTE

---

[10]    Noise LLC also argues that it is entitled to immunity under La. R.S. § 9:2800.10. Because this argument was not briefed by the movants, the Court need not address it. *See, e.g., Matter of Green*, 968 F.3d 516, 522 (5th Cir. 2020) ("Arguments given short shrift, such as this one, are forfeited."), *citing Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

[11]    The Court notes that CSB filed exceptions in state court prior to removal and sought dismissal of the claims against it on grounds the Board has no authority to participate or review supervisory decisions of members of the classified civil service, nor any authority of any kind over the operation, conduct or policy of the police department. [Doc. 4-2]. Although represented in state court, CSB made no appearance in the instant matter, and the Clerk of Court entered a Notice of Intent to Dismiss for Failure to Prosecute [Doc. 30] on November 17, 2025, with a cure date within 14 days of issuance of the Notice. That deadline having lapsed with no cure, the Court expects that the Clerk will dismiss the claims against CSB. Notwithstanding the foregoing, in the summary judgment memorandum, Defendants indicate that they adopt the exceptions filed by CSB in the state court action and urge the Court to dismiss all claims against CSB. [Doc. 22-1, p. 28]. Out of an abundance of caution, the Court includes its short analysis of those claims herein and dismisses all claims filed against CSB on the merits.

CONSOLIDATED GOVERNMENT through its police department, NOISE LLC dba LA BAMBA, and the LAFAYETTE MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD." [Doc. 1-1, ¶ 13]. Defendants argue that the sole purpose of the CSB is to manage the municipal civil service system, *see* La. R.S. § 33:2471, *et seq*., and the Plaintiff provides no evidence to dispute this, or to otherwise demonstrate the basis for a negligence claim against CSB. Therefore, Defendants' motion for summary dismissal of the Plaintiff's claims against CSB is GRANTED.

CONCLUSION

For the foregoing reasons,

IT IS HERBY ORDERED that the JOINT MOTION FOR SUMMARY JUDGEMENT [Doc. 22] filed by Defendants is GRANTED in its entirety, and all claims of the Plaintiff against Defendants Lafayette City-Parish Consolidated Government, Officer Clayton Green, Noise LLC d/b/a La Bamba, and the Lafayette Municipal Fire and Police Civil Service Board are DENIED and DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 5th day of December 2025.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE